## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA DUNLAVEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-18-671-G |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|     Defendant. | ) |

## **OPINION AND ORDER**

Plaintiff Pamela Dunlavey brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits and disabled widow's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. Having reviewed the administrative record (Doc. No. 11, hereinafter "R. _"),[2] and the arguments and authorities submitted by the parties, the Court affirms the Commissioners decision.

---

[1] The current Commissioner is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her benefits applications in December 2013 and March 2016, ultimately alleging a disability-onset date of April 12, 2013. R. 17, 310-26, 353-60. After her request was denied initially and on reconsideration, R. 17, 87-150, 153-60, two hearings were held before an administrative law judge ("ALJ"). R. 37-62, 63-86. The ALJ issued an unfavorable decision on February 6, 2017. R. 17-30.

The ALJ followed the five-step sequential evaluation process in determining Plaintiff was not entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 12, 2013, the alleged onset date. R. 20. At step two, the ALJ determined that Plaintiff has the severe impairments of polyarticular psoriatic arthritis, psoriasis, and obesity. R. 20-22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 22.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") during the relevant period, based on all of her medically determinable impairments, and found that Plaintiff "has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] is limited to occasional climbing of ladders, ropes, and scaffolds, frequent climbing of ramps and stairs, occasional hazards, and frequent balancing, stooping, kneeling, crouching and crawling." R. 22-27. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 27-28.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 28-29. Relying upon the hearing testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform sedentary occupations such as insurance investigator and skip tracer and that these occupations offer jobs that exist in significant numbers in the national economy. R. 29. The ALJ therefore determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R. 29.

The SSA Appeals Council denied review of the ALJ's decision. R. 3-8. The ALJ's unfavorable decision stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

STANDARD OF REVIEW

This Court's judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract

3

from the ALJ's findings," in determining whether the ALJ's decision is supported by substantial evidence. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). Though a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

*A. The ALJ's Step-Three Determination*

First, Plaintiff argues that the ALJ erred at step three in finding that Plaintiff's condition failed to meet or equal Listing 14.09(A)(1), which addresses Inflammatory Arthritis, and that this finding is not supported by substantial evidence. *See id.* at 8-17.[3]

*1. Listing 14.09(A)(1) and the ALJ's Finding*

At step three of the sequential evaluation process, the ALJ determines whether a claimant meets or medically equals the criteria of a disabling impairment set forth in the Listings. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d). Impairments that meet or equal a Listing are considered by the SSA "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* §§ 404.1525(a), 416.925(a) (2016). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to

---

[3] Although Plaintiff's brief mentions other impairments, other aspects of Listing 14.09, and another Listing, Plaintiff fails to adequately present and develop any related assertions of error, and the Court "will not speculate on her behalf." *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003); *see also* Def.'s Br. (Doc. No. 16) at 7 n.6.

4

show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).

To meet or equal Listing 14.09(A)(1), the claimant's impairment must "result[] in an 'extreme' (very serious) limitation." 20 C.F.R. pt. 404, subpart P app. 1, § 14.00(D)(6)(e)(i) (2016); *cf. Sullivan*, 493 U.S. at 532 ("The listings define impairments that would prevent an adult . . . from performing *any* gainful activity, not just 'substantial gainful activity.'"). Inflammatory arthritis, which is defined to include psoriatic arthritis, satisfies Listing 14.09(A)(1) if it is:

> A. Persistent inflammation or persistent deformity of:
> 1. One or more major peripheral weightbearing joints resulting in the ability to ambulate effectively (as defined in [Listing 14.00(C)(6)][.]

20 C.F.R. pt. 404, subpart P app. 1, § 14.09(A)(1) (2016); *see also id.* § 14.00(D)(6)(B). An "inability to ambulate effectively" is defined as:

> [A]n extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.* § 1.00(B)(2)(b)(1) (citation omitted); *see id.* § 14.00(C)(6); *see also id.* § 1.00(B)(2)(b)(2) (noting that to ambulate effectively individuals "must have the ability to travel without companion assistance to and from a place of employment or school").

At step three, the ALJ stated in relevant part:

> The medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

5

> More specifically, the evidence regarding [Plaintiff's] inflammatory arthritis fails to establish the required inability to ambulate . . . required by listing 14.09.

R. 22.

### 2. *Discussion*

In the written decision, the ALJ considered multiple items of evidence that supported the conclusion that Plaintiff was able to ambulate effectively. For example, the ALJ noted records issued from 2013 to 2016 reflecting that Plaintiff had a normal gait and normal physical examinations, as well as some findings of pain and difficulty sitting. R. 24-25 (citing R. 490, 494, 631, 634, 637-42, 655, 658, 661, 670-71, 674, 692); *see* R. 24 (citing R. 629). The ALJ also highlighted treatment evidence showing that Plaintiff had some positive response to treatment with Humira. R. 24-25 (citing R. 662, 681, 695, 786). The ALJ addressed multiple examinations showing no joint inflammation (synovitis) or arthritis affecting the tendons and ligaments (enthesopathy). R. 24-25 (citing R. 480, 674, 682, 690, 692, 695, 786). And the ALJ noted Plaintiff's own testimony that she drives her son to and from school each day and runs one errand per day in her car. R. 26; *see* R. 73, 79-80.

In arguing that she should have been found to have met or equaled Listing 14.09(A)(1) due to her inability to ambulate effectively, Plaintiff points to only one item of evidence contradicting that listed above: the hearing testimony of independent medical expert ("ME") Irving Kushner, MD. *See* Pl.'s Br. at 8-14, 17; R. 42-54. The Court does not agree, however, that Dr. Kushner's testimony materially undermines the ALJ's step-three finding as to Plaintiff's failure to show an "inability to ambulate."

Dr. Kushner initially stated that, based upon his review of the record showing Plaintiff's foot pain, he was "torn" about whether Plaintiff would meet the inflammatory-arthritis Listing due to her difficulty ambulating. R. 47. Dr. Kushner also initially stated that when Plaintiff's enthesopathy is active it prevented Plaintiff from ambulating effectively. R. 49; *see also* R. 48 (remarking that Plaintiff's enthesopathy, which causes foot pain," "[m]aybe . . . comes and goes"). But Dr. Kushner went on to clarify that Plaintiff's condition was inconsistent with the Listing in other ways, R. 49, and that he had not seen evidence that Plaintiff had used a cane or a walker when her condition flared up. R. 49. Dr. Kushner ultimately opined that although Plaintiff "might have functional limitations in a job which requires a moderate degree of ambulation," R. 49, Plaintiff would be able to work a sedentary job where she would not "move around too much." R. 50.

Although the ALJ did not cite particular items of evidence at step three, the ALJ's thorough findings in the remainder of the written decision, as detailed above, "confirm rejection of [Listing 14.09(A)(1)]" and "provide a proper basis for upholding" the ALJ's step-three conclusion. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733, 734 (10th Cir. 2005). Plaintiff has not shown the ALJ's finding "is overwhelmed by other evidence in the record." *Branum*, 385 F.3d at 1270. Specifically, the Court does not agree that Dr. Kushner's testimony establishes that Plaintiff suffers from an arthritic condition that meets the criteria of Listing 14.09(A)(1), including "an extreme limitation of the ability to walk" with "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s)." *Aslan v. Colvin*, 637 F. App'x 509, 509 (10th Cir. 2016); 20 C.F.R. part 404, subpart P app. 1, § 1.00(B)(2)(b)(1) (citation omitted). And

7

Plaintiff "fails to direct [the Court's] attention to any medical records confirming" that to be so. *See id.*

B. *The ALJ's RFC Determination*

Plaintiff next argues that the ALJ erred in finding that Plaintiff was able to perform sedentary work, limited as noted above, primarily because the ALJ failed to properly evaluate the opinions provided by Dr. Kushner. *See* Pl.'s Br. at 14-20. Plaintiff asserts that the ALJ's discussion of these opinions reflects improper picking-and-choosing, ignores relevant evidence, "and/or perhaps" shows that the ALJ inserted her own medical opinion into the analysis. *Id.* at 18.

An ME is "an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion." *Richardson v. Perales*, 402 U.S. 389, 396 (1971). The ME serves as "a neutral adviser," "used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner." *Id.* at 408. An ALJ generally may request and consider opinions from an ME such as Dr. Kushner "on the nature and severity" of a claimant's impairments. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017). The ALJ is required to evaluate an ME's opinions, including those regarding a claimant's RFC, just as the ALJ would evaluate other medical opinions. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

As noted above, Dr. Kushner opined that Plaintiff was able to perform sedentary work, as "she shouldn't move around too much," and the ALJ agreed and imposed additional limitations on Plaintiff. R. 22-23, 49-50; *see* SSR 83-10, 1983 WL 31251, at *5

(Jan. 1, 1983) (prescribing that walking and standing are only "occasionally" required in sedentary work). Further, the ALJ relied upon Dr. Kushner's testimony to temper the opinions of other physicians who concluded that Plaintiff could perform light work:

> The basis for the limitation to sedentary comes from the opinion of the medical expert, Dr. Kushner, who[] indicated that due to [Plaintiff's] heel and foot pain, she would have difficulty walking and being on her feet for long periods limiting her to sedentary work. Such opinion has been given adequate consideration in this decision as that of a specialist who[] had the opportunity to review the medical file. However, it should be noted that such limitation resolves doubt significantly in favor of [Plaintiff] as the objective medical findings support somewhat greater abilities and Dr. Kushner's opinion appears somewhat speculative. While it seems that [Plaintiff] may have some degree of ongoing pain, primarily in the heels and feet, the treatment notes most consistently note [Plaintiff] to have a normal gait without any significant neurological deficits. Findings regarding her heel and foot tenderness are intermittent in nature and the treatment notes further support that medication has been beneficial.

R. 26; *see also* R. 27 (ALJ giving "little weight" to a physician's opinion finding of "no significant functional limitations with standing, walking, sitting, or lifting," and giving "greater weight" to Dr. Kushner's finding of an ability to perform sedentary work than to two state-agency reviewing physicians' opinion that Plaintiff could perform light work); *cf. Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.").

The written decision sufficiently allows the Court to "ascertain the weight given" to Dr. Kushner's opinion "and the reasons for that weight." *Oceguera v. Colvin*, 658 F. App'x 370, 374 (10th Cir. 2016); *see also Chapo*, 682 F.3d at 1288 ("The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (alteration and

9

internal quotation marks omitted)). Accordingly, the Court discerns no prejudicial error in the ALJ's treatment of that opinion.

### C. Plaintiff's Remaining Claims of Error

Plaintiff argues that "the ALJ's decision does not indicate that she considered the cumulative effect of [Plaintiff's] impairments" at step two as required by 20 C.F.R. §§ 404.1523 and 416.923 (2016). Pl.'s Br. at 22. As support, Plaintiff (i) points to the ALJ's failure to ask Dr. Kushner about "an equaling" and (ii) states, "Simply, [the ALJ] did not or this Court would have seen evidence of same in her opinion." *Id.* Plaintiff offers no authority for the proposition that the ALJ was required to specifically ask the ME about the combined effect of impairments and, in any event, Dr. Kushner expressly discussed "a number of other issues" in addition to the psoriatic arthritis. *See* R. 44-47. In addition, "the ALJ specifically explained in [her] decision that at step two [she] considered Plaintiff's impairments both separately and in combination." *Bryant v. Berryhill*, No. CIV-15-1151-HE, 2017 WL 401263, at *11 (W.D. Okla. Jan. 30, 2017); *see* R. 19, 21. Plaintiff has not shown that reversal is warranted on this basis. *Cf. Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (rejecting claimant's argument that ALJ did not consider combined effect of impairments when ALJ addressed "various impairments" and appellate court found "nothing to suggest they were not properly considered"); *Wall*, 561 F.3d at 1070 ("Where . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (alteration and internal quotation marks omitted)).

Plaintiff next suggests that the ALJ denied the applications for biased or otherwise improper reasons. *See* Pl.'s Br. at 22-23 ("[T]his ALJ's historical record would tend to

indicate that she is predisposed to deny claimants."). Plaintiff does not actually allege that the ALJ engaged in any impropriety, and merely citing the number of unfavorable decisions issued by this ALJ is insufficient to overcome the "presumption of honesty and integrity in those serving as adjudicators" in administrative proceedings. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). The Court rejects Plaintiff's insinuation entirely.

Finally, Plaintiff asserts that the ALJ erred by relying upon the VE's testimony at step five because the ALJ failed to present the VE a hypothetical question including all of the limitations found necessary by Dr. Kushner. *See* Pl.'s Br. at 20-22 ("sitting all day, pain with ambulation, enesthopathy flares"); R. 60. As a threshold matter, Dr. Kushner did not directly state that Plaintiff herself must "sit[] all day." *See* R. 48, 50. More significantly, it is well settled that a hypothetical question posed to the VE is sufficient if "it contained all of the limitations found to exist by the ALJ," *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000), so long as the ALJ's finding is supported by substantial evidence in the record. *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The [ALJ] had to ask only about the effect of those limitations ultimately assess; the judge did not need to ask about the effect of limitations that he didn't believe applied."). Plaintiff has not shown a lack of substantial evidence for the ALJ's findings and thus has not shown any prejudicial error here.

## CONCLUSION

The challenged findings are supported by substantial evidence in the record and do not reflect prejudicial legal error. The decision of the Commissioner is AFFIRMED. A separate judgment shall be entered.

IT IS SO ORDERED this 23rd day of September, 2019.

CHARLES B. GOODWIN
United States District Judge